JUDGE LINDSAY
delivered the opinion oe the court.
Appellees sued Patrick Morrissey, and summoned the Elizabethtown & Paducah Railroad Company to answer as garnishee, claiming that certain moneys were due from that corporation to their debtor.
Morrissey contracted with the railroad company to grade its depot-grounds at'Elizabethtown, and, among other things, it was agreed between the contracting parties as follows: “ There shall be a monthly estimate made by the aforesaid *58 engineer of the quantity, character, and value of the work done during the month, or since the last monthly estimate, eighty-five per cent of which value shall be paid to the ‘contractor’ at such place as the chief engineer may appoint; and when the work is completed and accepted by the said chief engineer there shall be a final estimate made by the engineer of the quantity, character, and value of said work, agreeably to the terms of this agreement, when the balance appearing to be due to the ‘contractor’ shall be paid to him, upon his giving a release under seal to the said company from all claims or demands whatsoever growing in any manner out of this agreement. And it is hereby further agreed that in case the said ‘ contractor ’ shall not well and truly, from time to time, comply with and perform all the terms herein before stated and stipulated on his part, in manner and form and within the time herein before mentioned, or in case it shall appear to said chief engineer that the work does not progress with sufficient speed or in proper manner, or in case of interference with said work by legal proceedings instituted against the ‘ contractor’ by other parties than the said company, the said chief engineer shall have power to annul this contract, if he sees fit so to do, by giving notice in writing, etc.; . . . when, upon such serving of said notice, the foregoing agreement on the part of said company, and every claim and part thereof, shall become null and void, and the unpaid part of the value of the work done shall be forfeited by the ‘contractor’ to the use of said company in the nature of' liquidated damages.” Morrissey failed to complete the work within the time agreed, but the company did not exercise its right of annulling the contract by reason of such failure; but about six weeks thereafter he abandoned the work entirely; whereupon these appellees attached his tools and implements, and a day or two afterward the chief engineer of the company took the necessary steps, and declared the contract annulled.
*59 It appears that the amount retained by the company upon the work for which estimates had been made was something over one thousand three hundred dollars, and that the value of the work done for which no estimate had been made was about one hundred and seventy-two dollars. These amounts the company claimed, the right to retain as liquidated damages under the terms of its contract with Morrissey. The circuit judge disregarded this claim, and adjudged that it should satisfy appellees’ debts out of the aforesaid sums. From that judgment this appeal is prosecuted.
It sufficiently appears that the. stipulated forfeiture was incurred, and that the railroad company ought to be allowed to retain at least the fifteen per cent upon the value of the work for which estimates had been made, if contracts of this character can be enforced. It is well settled that forfeitures are to be regarded by courts with but little favor, and that they will seldom be upheld if it can be made to appear that they were intended to operate as penalties. Still there are cases in which parties will be allowed to agree upon a definite sum as the amount of damages which may result from the violation of their contract. (Applegate v. Jacoby, 9 Dana, 206.)
These cases are divided by Mr. Sedgwick into five distinct classes, the last of which is “where, independently of the stipulation, the damages would be wholly uncertain and incapable, or very difficult of being ascertained except by mere conjecture,” in such cases, the author continues, “the damages will be usually considered liquidated, if they are so denominated in the instrument.” (Sedgwick on Measure of Damages, side page 422.)
Contracts for the construction of railways have been held to come within this class, and the penalties which these contracts usually provide in case of default upon the part of the contractor are commonly regarded in the nature of the liqui *60 dated damages. (Runger v. Gt. Wes. Railway, 27 Eng. Law and Equity Reports, 61; Gartin et al. v. Penn. & Ohio Canal Company, 13 Ohio, 79; Hennessey v. Farrell, 4 Cushing, 267; Pierce’s American Railroad Law, 377.)
From the peculiar character of the work to be performed, and the great importance of having all parts of a line of railway progress toward completion at the rate of speed contemplated when the work is put under contract, it would be almost impossible to estimate with any degree of accuracy the damages sustained by the failure of a contractor to keep and perform the material stipulations of his contract, and it seems to us that there is no good reason why in case of such failure he should not be required to indemnify the party injured by the payment of the stipulated amount, unless it be so exorbitant that to enforce its payment would be to inflict a penalty upon the party in default, instead of merely making good the injury sustained by his breach of contract. No such result will follow the enforcement of the contract under consideration; and, as the engineer was justified in annulling it, the company ought to be allowed to retain the fifteen per cent withheld upon the monthly payments of the estimated value of the work as it was done.
The failure of the company to annul the contract because the work was not completed within the prescribed time was .not a waiver of its right to subsequently annul it when the contractor abandoned the work altogether.
We are of opinion that the terms of the contract do not authorize the railroad company to retain the entire value of the work done in December. It is true the contractor could only demand that his work should be estimated at the end of each month, and that it was agreed, in case the- contract should be annulled, the unpaid part of the value of the work done should be forfeited to the company, but this forfeiture should only be applied to the fifteen per cent retained; and *61 as the company accepted the work for which no estimate has been made, it should be required at least to account for its actual value less fifteen per cent, otherwise as to this work it would be permitted under the guise of witholding liquidated damages to inflict a penalty. We are aware that in one case (Williams v. Androscoggin & Kennebec Railway Company, 36 Maine, 201) the doctrine has been carried to the extent insisted upon by appellant, but we are unwilling to give our sanction to the rule enunciated and acted upon in that case.
For these reasons the judgment of the circuit court is reversed, and the cause remanded for further proceedings consistent with this opinion.