JUDGE PRYOR
delivered the opinion of the court.
On the 20th of October, in the year 1868, the appellant, W. P. Hahn, in consideration of the sum of eighteen hundred dollars, sold and conveyed to August Horstman and Ignatius Dilly a lot of ground in the city of Louisville lying between Underhill Street and Beargrass Creek, being a part of what is known as Preston’s Addition. Although the deed acknowledges the receipt of the purchase-money, none was in fact paid, the parties executing three notes, payable in installments of six hundred dollars each.
It seems that the lot sold was subject to overflow, and on the same day the conveyance was executed the appellant signed an obligation in which he undertook and agreed with the grantees *252 in the deed (Horstman and Dilly) to fill up the lot in its whole extension to a height as marked by a civil engineer; also to fill up the alley sixteen feet wide leading from the lot to Underhill Street; also to dig and wall up, at his expense, a reservoir for water inside the distillery building containing 180 barrels, and to furnish and lay all pipes necessary for the conveyance of water from the springs and ponds to the reservoir. The filling of the lot for the use of the buildings was to be completed within twenty-four days from the date of the obligation, the filling of the balance of the lot within two months, and the filling of the alley within three months; and the appellant further agreed, in the event of a failure on his part to perform these obligations, to pay, as liquidated damages, twenty dollars for each day the worlc might remain incomplete after the expiration of the time agreed upon for its execution, to be deducted from the purchase-price.
The appellant undertook the performance of his contract, and, from the weight of the testimony, completed about sixty per cent of the labor in filling, etc., and on account of some disagreement between himself and Horstman ceased to labor, leaving the contract incomplete.
The appellant, after he had executed the conveyance and entered into the obligation already stated, undertook to build for the appellees upon the premises a bonded warehouse of certain dimensions, to be paid for at its completion. This warehouse was completed in accordance with the contract, and the appellees refused to pay for the building because, as they allege, the appellant had failed to fill up the lot and alley in accordance with his agreement.
An action in equity was then instituted by the appellant against the appellees, Horstman and the heirs of Dilly (the latter being dead), to enforce a mechanic’s lien upon the premises for the agreed price of the bonded warehouse. Actions had also been instituted on the notes for the purchase-money *253 in the common pleas court, and by motion were transferred to the chancery court, and there consolidated with the action in equity by appellant to enforce his mechanic’s lien. To the action in equity, as well as the action at law, the appellees pleaded, by way of counter-claim, the failure of the appellant to perform his contract; that the building erected by him was worthless without a distillery, and that by reason of the failure of the appellant to comply with his agreement they were unable to erect a distillery building, or to conduct the business of distillers; that under the contract the appellant, having failed to comply with its stipulations, was compelled to pay them in the way of liquidated damages $20 per day from the 13th of November, 1868 (the time at which the work was to have been finished), until the 16th of November, 1869, a' period of 368 days, amounting to $7,360.
Upon the final hearing the court below rendered a judgment in favor of the appellant for the sum of $1,037, the agreed price for erecting the warehouse, and denied any recovery of the purchase - money, allowing to the appellees the full amount thereof by reason of the counter-claim, and from that judgment the appellant prosecutes this appeal.
The judgment in this case having been heretofore reversed, this court is again asked to reconsider the questions involved and to affirm the judgment below.
We find no difficulty in reconciling the authorities to which our attention has been called by counsel with the principle already recognized in the determination of this case, viz., that parties to a contract may agree upon any amount of compensation for its breach as liquidated damages which does not manifestly exceed the amount of injury suffered, and the party in default will be required to pay this fixed sum as an equivalent for the loss sustained. (Pierce v. Fuller, 8 Mass. 223; Bagley v. Peddie, 16 New York, 469; Mott v. Mott, 11 Barbour, 127.)
*254 That damages may be liquidated in advance of the breach, as a compensation to the party who is to suffer, in the event of a default is well settled, and a court of equity has no power to change the conti’act regulating the damages or the amount of recovery in order to grant relief. The phrase liquidated damages does not.always control the coui’t in the construction of contracts, with a view of ascertaining the damages to which a party may be entitled, but on the contrary such language embodied in a contract has been often disregarded, and the subject-matter about which the contract is made, and the intention of the parties, the legitimate elements in the interpretation of all contracts, are resorted to, for the purpose of ascertaining the loss or damage the party has really sustained.
If the actual damage sustained by the party complaining can not be reached or determined by any known rule of law, then the courts are disposed to look alone to the measure of damage fixed by the contract; but as a general rule where the actual damage can be ascertained from the nature of the contract itself, the courts are always inclined to disregard the language of the contract so far as it fixes the damages, and particularly in cases where a strict construction of the language used would result in oppression to the party against whom the claim is asserted, by giving to the complaining party more damages than he has really sustained. (Sedgwick on Damages, 420.)
The principles recognized by the elementary authorities in determining whether the damages agreed on are to be x’egarded in the natux-e of penalties or as liquidated damages, are — 1st, when the sum is expi-essly stated to be a penalty, with no other words controlling or affecting the language used, the sum can not be considered as liquidated damages; 2d, when the payment of a smaller sum is secured by a larger, the last-named sum must be regarded as a penalty; 3d, whei'e the sum which is to be a security for the non-performance of an agree *255 ment to do several acts will in case of breaches of the agreement be in some instances too large and in others too small a compensation for the injury thereby occasioned, that sum is to be considered as a penalty. It is also a rule that liquidated damages must be construed as a mere penalty, in all cases where the agreement contains various stipulations differing in importance, and it is to each and all of them the damages apply.
"When ascertaining the general doctrine applicable to questions of this character the case before us presents but little difficulty, and the real injury sustained by the appellees should have been made the subject of inquiry. It is evident that the parties to the contract must have regarded the sum stated as liquidated damages to be in the nature of a penalty, in the event of a failure on the part of the appellant to comply with its several stipulations. The whole property was sold for the sum of $1,800, with the obligation on the part of the appellant to do certain work- upon the lot; and upon his failure to perform it he was to .pay $20 a day as liquidated damages for each day transpiring after the breach; and to enforce this obligation by a judgment for the stipulated damages would be not only to deny the appellant the right to recover any part of the purchase-money, but to render a judgment against him for several thousand dollars.
If the appellees were entitled to recover a sum equal to the entire amount of the purchase-money as liquidated damages, we see no reason why the chancellor should stop at canceling the notes for the land. The fact that the damages were to be deducted from the notes was no limitation upon appellees’ right of recovery, if the theory of appellees’ counsel is to be adopted. The damages were fixed, and the appellees entitled to recover the sum of $20 for each day the work remained incomplete after the breach.
The bare statement of the proposition is a sufficient argument for treating the sum to be paid in the event of a breach *256 as a penalty, and for the refusal by the chancellor to divest the appellant of the absolute title to his land upon no other consideration whatever than his failure to comply in every particular with the terms of the contract. The land sold is shown by the testimony to have been worth $25 a foot, and the value of the work to be performed by the appellant could not have exceeded more than one third the value of the property. As much as sixty per cent of the work had been completed ; and as the entire contract was not complied with, the chancellor is called upon to require the appellant to surrender all claim to the purchase-money.
The contract required the appellant to fill up the lot to a certain height, as marked by the engineer; also to fill up an alley sixteen feet wide, to dig and wall up a reservoir for watei*, and to furnish and lay pipes necessary for the conveyance of water to the reservoir. Some of the work was to be completed in twenty-four days from date, a part in two months, and the remainder in three months; and the failure to perform either of these stipulations was a breach of the contract, for which he was to pay $20 for every day transpiring after the work should have been completed. By the letter of the contract if the appellant had completed all the work but filling the alley, and this had remained unfinished for as long a period as ninety days after the breach, he would have forfeited the whole of the purchase-money.^
“ Liquidated damages must be construed as a mere penalty in all cases where the agreement contains various stipulations, differing in importance, and it is to each and all of them the damages apply.” (Kemble v. Farren, 6 Bingham’s Eng. and Com. Law Reports, page 34.)
In the case cited the defendant had agreed to act as a principal comedian at Covent Garden Theater for four seasons, the plaintiff agreeing to pay a certain price for every night the theater should be opened, and allow the defendant one benefit *257 night each season. The agreement contained the further clause that upon the failure of either party to perform his agreement, or any stipulation thereof, such party should pay to the other the sum of £1,000, which sum was thereby declared by the said parties “to be liquidated and ascertained damages, and not a penalty or penal sum, or in the nature thereof.” The breach alleged in that case was the failure of the defendant to act during the second season, and a judgment ivas sought for the stipulated damages. It was held that the plaintiff was entitled to recover only such compensation as the jury, under the proof, might see proper to .give him. The verdict was for £750.
The courts are inclined, where the sum agreed on as damages exceeds or may exceed the whole of the consideration received by the party in default, to adjudge such sum as in the nature of a penalty and not as liquidated damages, and where there has been a partial performance, to give to the plaintiff no greater sum than the actual damage sustained by him. (Berry v. Wisdom, 3 Ohio St. R. 241; Sedgwick on Damages, 431; 1 Indiana, 434.)
In the present case the appellees have never paid one dollar of the purchase-money, or shown any expenditures by reason of the contract that would materially lessen the amount of recovery, and yet by the judgment below the action for the recovery of the purchase-money is dismissed, and the appellees left in the undisturbed possession of the property as the absolute owners, with the lien of the appellants satisfied by the judgment.
There can be no difficulty in arriving at the actual damage sustained by the appellees. The work has been partly performed, and the reasonable value of the labor and material necessary to complete it is the true criterion.
That the lot was intended for a distillery, and the distillery, if erected, would have made fabulous sums by way of profit each day (some of the witnesses fixing the profit at $17S per *258 day), must be regarded as merely speculative, and as affording no reason for inducing the parties to anticipate the damage when making the contract. Such damages are too remote and uncertain to have been considered by the parties or to afford any test in a case like this. The application of such a rule to the issue involved in this ease would not only amount to a judicial confiscation of Hahn’s property, but make the appellees pensioners upon his estate ad infinitum.
The case seems not to have been prepared by the,appellees with a view of ascertaining the actual damages sustained by them, and the case must go back for additional preparation on this branch. If the appellees were compelled to abandon their work on the distillery by reason of the failure of the appellant to fill up the lot, then their work upon the lot, if of no value to them by reason of the breach by appellant, should be estimated as part of the damages sustained.
The building of the bonded warehouse forms no part of the, contract in controversy; and if so, the proof shows a compliance with its terms by the appellant and a failure to pay by the appellees.
The judgment dismissing appellant’s action for the recovery of the purchase-money is reversed, and cause remanded for further proceedings consistent with this opinion.