## Burton v. Burton's Committee (two cases).
(Decided Jan. 28, 1936.)

500

W. J. FIELDS and JESSE K. LEWIS for appellant.

THOMAS D. THEOBALD, Jr., for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming in part and reversing in part.

In March, 1927, Arthur Gee was appointed committee for D. H. Burton, who was adjudged an incompetent by reason of an injury sustained while in the services of the government during the World War, for which the government has been paying him compensation in the sum of $107.40 per month, which was paid to Gee as his committee. The incompetent was sent to the Eastern Kentucky Hospital at Lexington and his committee kept the funds of his ward on deposit in the bank of which he was the cashier, subject to checking account, but he did not invest his ward's funds in any manner. He made no settlement of his account as committee to the county court or otherwise, until September, 1932, at which time he filed his report with the county court showing all receipts and expenditures and showing a balance at the close of each year, as follows: On December 31, 1927, $1,163.49; December 31, 1928, $2,491.69; December 31, 1929, $3,777.69; December 31, 1930, $5,129.07; December 31, 1931, $6,-360.29; and on June 30, 1932, $6,991.54. In his report he asked the court to allow him $20 per month for his services. The appellant, Aaron Burton, brother of the incompetent, filed exceptions to the report on the ground that appellee had not accounted for interest due D. H. Burton, the incompetent, as provided by sections 2035 and 2035a-1, Kentucky Statutes; that he had allowed himself unreasonable and illegal sums for his services as committee; that he had paid out of said sums money not authorized by the court and contrary to section 2043-13, Kentucky Statutes Supp. 1933; and that he failed to invest said funds as provided by section 4706, Kentucky Statutes. In support of his exceptions he filed a schedule, calculated on the basis of interest as provided in section 2035a-1, Kentucky Statutes, on the sums in appellee's hands at the end of

each year, and 5 per cent. commission on the sums actually disbursed as his only compensation for his services. By this method of calculation it is shown that appellee should have accounted to his ward for the sum of $2,339.10.

Appellee filed his response to the exceptions in which he denied that he was chargeable with the interest alleged to be due as set out in the exceptions or any part thereof, aggregating the sum of $2,339.10 or any other amount.

And for further response he stated: (1) That the only estate coming into his hands as committee for his ward was a fund paid to the ward by the United States government as compensation for injury received by him while in its employ at the rate of $107.40 per month, and such fund was held by him in accordance with the Federal Act (5 U. S. C. A. sec. 751 et seq.) creating and authorizing such payments for the benefit of such incompetent. (2) That during the years he held such fund he contemplated the investment of it in real estate, mortgage notes and bonds, or other interest or dividend paying securities as regarded by prudent business men as safe investments; but on account of general commercial and economic conditions and fluctuation of securities he was unable to make any safe investment of said funds: that prudent business men were not doing so but were advising against same, and that no safe or secure investments were available under section 4706, Kentucky Statutes, or otherwise; and that all kinds of securities were continually decreasing in value, a general depression existed, prices of bonds, stocks, notes, lands, and commodities inflated and decreased, and the market and country was in such a deflated and insecure condition that prudent business men could not safely invest. He further stated that in view of the conditions an investment would have resulted in serious loss to the estate of his ward, but by his keeping and preserving the money instead of investing it he had saved the estate of his ward the entire principal thereof and held it intact. He further contended that he was entitled to reasonable compensation for his services in looking after and caring for his ward's estate and that he had had the personal care, though not the custody, of his ward and had continually visited him and administered unto him

while detained in the state institution without the payment of any sum whatever out of the ward's estate to such institution and had given much of his time and energy to the protection and management of such estate and by reason thereof saved the same from loss and held it intact, much to the advantage and benefit of his ward, and thus saved approximately $3,000 which would otherwise have gone to the state of Kentucky and been deducted from the principal of the ward's estate.

Thereafter, he filed a supplemental response to the exceptions setting out therein that the fund received by him and accounted for in his report was awarded to his ward by an act of Congress of the United States to provide compensation for its employees suffering from injuries while in the performance of their duties and that by said act of Congress a commission was created and authorized to make rules and regulations for the enforcement of said act and decide all questions arising thereunder, including the disposition of such funds and determining all questions arising thereunder, and that such commission alone has jurisdiction of such matters and the state courts have no jurisdiction whatever, except the authority only to appoint a committee for such incompetents to take charge of said funds and administer it under the exclusive supervision and control of the said commission created by the act of Congress.

Upon consideration of the exceptions and the response thereto the county court entered the following judgment:

"This cause coming on for a hearing on exceptions to the commissioners' report herein, the court being advised sustains said exceptions to the following extent, and holds and orders that said committee shall pay to his ward interest to the rate of 3 per cent. on all money received by him beginning at the end of the first year of his appointment; and that he shall be charged with interest upon interest, in biennial rests until the 30th day of June, 1932. The reason for the court's decision regarding the above interest is that same remained on deposit with Commercial Bank of Grayson, Grayson, Kentucky, during all the above time, and that said institution during said time paid 3 per cent. on time deposits. The court holds

that said committee being one of the principal officers of said institution owed his ward the duty of at least securing him interest at said rate.

"The committee is hereby allowed for his services rendered the sum of 5 per cent. of all money received by him for said ward."

From the above judgment the exceptor prosecuted an appeal to the circuit court, and upon a review of the record the circuit court affirmed the judgment of the county court, and to reverse that judgment the exceptor has prosecuted this appeal.

It is insisted for appellee that under the terms of the Federal Code, title 5, sec. 751 (5 U. S. C. A. sec. 751), relating to compensation for disabled government employees, no one except the employee's commission created by said act of Congress has the right to except to a committee's report or take any action whatever relating thereto and that the incompetent is a ward of the government, not of the county court, and the county court has jurisdiction only to appoint a committee to take charge of such compensation funds, but has no further jurisdiction relating thereto.

The act of Congress under consideration gives the county court the authority to appoint a guardian or committee to receive the funds of such incompetent, and in the absence of an express or necessarily implied provision to the contrary, we think that the county court being invested with the authority to appoint a committee it necessarily follows that the same court has the right to consider exceptions to the report or settlement of such committee and approve or disapprove same under the provisions of the state laws relating to other fiduciaries. True it is, the compensation committee created by the act of Congress relating to compensation of government employees may also have the right to except to reports and look after the interest of such wards. But we find no provision in said act giving the commission the exclusive right to except to reports or settlements of such committee nor does the act specifically provide for compensation for such committee or guardian. We think that it was contemplated by the act of Congress that the compensation of such committee and the administration of his ward's funds are to be governed by the state laws relating to other fiduciaries and their wards.

Appellee admits that he did not invest his ward's funds and attempts to excuse his failure to do so as set out in the response to the exceptions. It is shown that the bank of which appellee was cashier was paying 3 per cent. on time loan deposits during the time he had his ward's funds deposited in his bank. Also it is common knowledge that various banks were paying 3 per cent. and some of them as high as 4 per cent. on time loan deposits during that period. While this court has taken judicial notice of the economic depression and uncertain conditions of the stock markets, real estate values, and the uncertain conditions generally with respect to investments, we do not think appellee's explanation is sufficient to excuse him for failing to invest the funds of his ward. Section 2035 of the Kentucky Statutes reads:

> "If, from any source, a balance is owing by a guardian at the end of any year, counting from the time of his appointment, which ought to have been invested or loaned out for the benefit of the ward in reasonable time, but which remains in the hands of the guardian, he shall be charged with interest from the end of the year in which such balance arose; and thereafter he shall be charged with interest upon interest, in biennial rests, and the guardian shall account to his ward for whatever profit or rate of interest he receives from loans or investments of the trust funds."

See, also, McCreary's Adm'r v. McCreary's Committee, 185 Ky. 445, 215 S. W. 78.

If appellee had invested his ward's funds in the bank on time loan interest-bearing certificates to the best advantage in the exercise of his best judgment, it would have constituted such investment as is contemplated by section 4706 of the Kentucky Statutes [Hines, Adm'r on Veterans' Affairs v. Brown's Committee, 261 Ky. 630, 88 S. W. (2d) 314], and he would have been required to account only for such interest received, although it may have been less than 5 per cent. But having failed to make any investment at all he should have been charged with interest as provided in section 2035a-1, which reads:

> "That guardians, curators and committees, appointed and qualifying under the passage of this

act, shall be charged with the following rates of interest, to-wit:

"Where the amount received and held in trust does not exceed five thousand dollars ($5,000.00), five per cent. (5%); where the amount received and held in trust exceeds five thousand dollars ($5,000.00) four per cent. (4%): Provided, that nothing in this act shall prohibit or prevent such fiduciaries from accounting for, or being chargeable with, such sum or sums in excess of the rates herein fixed, as may be realized upon any investment of any such funds made by any such fiduciary."

In view of these statutes it is manifest that appellee should have been charged with the rate of interest under section 2035a-1 and the court erred in charging only 3 per cent. instead of the statutory rate. And it was error to allow appellee a commission of 5 per cent. on the amount received instead of the amount *disbursed.* Section 3883, Kentucky Statutes; Clay v. Howard's Ex'r, 247 Ky. 512, 57 S. W. (2d) 484, 88 A. L. R. 186; Renick's Ex'r v. Renick, 92 Ky. 335, 17 S. W. 1018, 13 Ky. Law Rep. 600.

It is insisted for appellee that in fixing his compensation at 5 per cent. on the sums received, the court took into consideration his extraordinary services. That may be true, but the court did not say so in the judgment. The language of the judgment is: "The committee is hereby allowed for his services rendered the sum of 5% on all money received by him for his ward." This language is susceptible of the construction that the court allowed appellee 5 per cent. on all money received without regard to extraordinary services. We have no way of knowing what the court had in mind except the language used. If the court was of the opinion that appellee was entitled to compensation for extraordinary services, it should have designated this by a separate finding in addition to the 5 per cent. allowed for the sums disbursed. We do not mean to say that appellee is not entitled to compensation for extraordinary services, and, upon a return of the case and a resettlement of the accounts, the court will take into consideration the extraordinary services rendered by appellee, if any, and allow him such compensation as.

it may deem proper. Wherefore, the judgment on this appeal, Action No. 2114, is reversed for proceedings consistent with this opinion.

After the appeal of the action relating to the exceptions to appellee's report had been prosecuted, Aaron Burton, the exceptor to the settlement, filed motion in the county court, Action No. 2789, for the removal of the committee, appellee, on the grounds that he had failed to file within 60 days after his appointment an inventory of his ward's personal estate that came into his hands as such committee as required by section 2027, Kentucky Statutes, and that he had failed to invest his ward's funds as authorized by section 4706 of the Statutes, and other complaints which we will hereinafter consider. As evidence to support his motion he relied upon the facts set out in the exceptions to the settlement, Action No. 2114, and that record was considered with the motion to remove appellee. The county court denied his motion, whereupon he appealed to the circuit court. The regular judge of the Carter circuit court being disqualified, for some reason, to consider the motion, the Hon. S. S. Willis was designated special judge to hear and consider the motion and upon a consideration of same dismissed it, and affirmed the judgment of the county court, and appellant has appealed from that judgment. The question of exceptions to the report we have hereinabove discussed, was not before Judge Willis and he considered only the motion to remove appellee.

By agreement of parties both records and motions (exceptions to report and motion to remove) are considered together and both questions will be disposed of by the same opinion.

The estate did not consist of various goods, chattels, etc., as necessarily required a formal inventory. It consisted only of cash payments from the government each month in a definite sum, and all the committee was required to do was to receive these sums and deposit them in the bank to his account as such committee. In view of the nature of the estate we do not think appellee's failure to file a formal inventory as required by the statute constitute grounds for his removal as committee.

It is also insisted that under the same sections of

the statutes it was the commitee's duty to settle his accounts with the county court within 60 days afer he expiration of one year from his appointment and at least once every two years thereafter, which the committee failed to do, and it is insisted that this was cause for his removal. While it was the duty of appellee to comply with the statute in those respects, yet, in view of the report and settlement he did make, we do not think his faliure to strictly comply with the statute was prejudicial to the interest of the ward. The settlement he filed in 1932 showed the status of his account at the end of each year since his appointment. It does not appear, nor was there any complaint, that the ward suffered any loss by reason of appellee's failure to make the settlements of his account in strict conformity with the statute.

It is also insisted that the appellee's failure to invest the funds of his ward as authorized by section 4706 of the Statutes was grounds of removal and the report filed by him disclosed such conduct in the handling of the estate of his ward that the court should have removed him. It is also complained that appellee's attempt to charge his ward $20 per month compensation for handling his estate was proof of his unfitness to continue to serve as committee. But we do not think that the mere asking of an exorbitant compensation which was not allowed by the court constitutes grounds of removal. As we have stated, it does not appear that the committee misappropriated any of the funds of his ward or that the ward has suffered any loss.

It is also charged that appellee made disbursements of his ward's funds without order of the court. In answer to this charge it is sufficient to say that his settlement disclosed all disbursements and the purposes of same, all of which the court approved, and there is no complaint that any of these disbursements were improper. As stated in a memorandum opinion of the trial court which is in the record:

"The removal of a guardian is not the appropriate remedy for failure to invest funds in his hands. The remedy is to hold the fiduciary liable for interest as provided by the statutes. Section 2035, Ky. St.; McCreery's Adm'r v. McCreery's Committee, 185 Ky. 445, 215 S. W. 78."

And, furthermore, the removal of a fiduciary rests largely in the discretion of the trial court and this court will not reverse the judgment of the trial court unless an abuse of sound discretion is made to appear. Hines, Adm'r of Veterans' Affairs, v. Brown's Committee, 261 Ky. 630, 88 S. W. (2d) 314 and cases cited therein.

Upon the whole case we do not think that the court abused a sound discretion in failing to sustain appellant's motion to remove appellee as committee.

Wherefore, the judgment is affirmed on the action, 2789, to remove the committee.